By the Court,—Brady, J.
It was not necessary to state in the affidavit that a transcript of the judgment had been filed at the office of the county clerk.
The judgment, of which the supplementary proceedings were predicated, had been obtained in this court. The Oode (sec. 292) does not make that a pre-requisite in such a case. *134 When the proceedings are founded upon a judgment obtained in a district court in this city, it is essential to jurisdiction. (Code, sec. 68.) The cases upon this question cited by the defendants’ counsel related to judgments in justices courts, which affected only the personal property of the debtor, ex proprio vigore, and the judgments pronounced were based upon that construction. Were it otherwise, it is shown that the debtor had no real estate, and the amendment allowed by Judge Cakdozo remedied the defect.
The Glen Cove Starch Manufacturing Company could have proceeded against the defendant Bradley to recover the goods in specie, or them value, in an action founded upon the fraud alleged to have been committed, or they could waive the tort, affirm the sale, and sue as for goods sold and delivered. It is conceded that them judgment was recovered upon an alleged sale and delivery of the goods, and the right to proceed as for a tort was waived and merged. Although such was the legal result of the form of action adopted by them it would not have prevented them from assailing the assignment on the ground that it was made with intent to defraud creditors.
The gravamen of the two causes is entirely different. The fraudulent representations by which they were induced to sell their goods were proved for the purpose of showing an intent to accumulate property for a fraudulent purpose, in conjunction with similar transactions, but not by them as suitors, but by the receiver, who represents the interest of the creditors as well as those of the debtor, and who is a trustee for all parties. (Bostwick v. Berger, 10 Abbott Pr., 197; Porter v. Williams, 5 Seld., 142; The Chautauque County Bank v. White, 2 Seld., 236.) This action cannot be regarded as commenced by the Glen Cove Starch Manufacturing Company. The receiver takes the property of the debtor if the assignment cannot be sustained, inasmuch as the assignee has no title to it or its proceeds. The fraudulent conveyance in such an action as this may be annulled, and the creditor permitted to proceed to a sale upon his execution, or the property sold and the proceeds applied to the pa3rment of debts according to their legal or equitable priorities. (Cases, supra.)
It was the duty of the receiver, if the facts and circum *135 stances warranted it, to essay to get the assets of the debtor by attacking an assignment which he believed was fraudulently made to hinder and delay the creditors from the collection of their debts. The plaintiff is, therefore, rectus in curia. There is no doubt that the assignor Bradley, made purchases when he was insolvent. He had a right to do so. It was not evidence, per se, of a fraudulent intent, though it was a fact to be considered with reference to the general design which he had in view. His false representations, however, were wholly unjustifiable. (Nichols v. Pumer, 18 N. Y., 295; and 23 N. Y., 264.)
It may also be said that he had a right to make an assignment, preferring creditors; but, nevertheless, the exercise of both rights may have been with the intent to defraud. A lawful act in itself may be done with a fraudulent intent, and the facts and circumstances surrounding the defendant militate much against his honesty. He not only purchased largely within a short time before he made an assignment, but obtained many of the goods bought, by representations as to his solvency, which were false. The greater part of the goods thus obtained were shipped, and the creditor prevented therefore from reclaiming them. His purchases within six weeks prior to the assignment, were more than enough to pay his confidential debts, but so little in excess as to justify the conclusion that his scheme was to get goods enough to protect that class of creditors, and then to assign.
This explanation of the causes of his failure I admit was plausible. He lost by stock operations and by the failure of his brokers, whose notes he had to take for the margin deposited with them, and his credit was seriously injured by the conduct of some of his creditors who, by offering his paper at a large discount, depreciated his ability to meet his engagements. These causes precipitated, he says, the assignment which he had not designed to make until almost immediately before it was executed. It appears, however, that his stock operations were based upon money which was not part of his capital, and that he had made gains though not sufficient to cover the losses and margins withheld.
These explanations, however, are not sufficient to remove *136 the effect of his extraordinary conduct in making the purchase he did by false statements. I should be much disposed to * regard his assignment as honestly conceived, were it not for this element. It was that indeed which justified his creditors in assailing his credit, and when it was assailed, he could not defend it.
It is true that he says that he did not know that he was not solvent, but that cannot avail him. ” When inquired of on that subject in reference to a purchase on credit, he was bound to know it. If a man may be excused by a supposition or belief that what he says is true, under such circumstances, with all the means of knowledge at hand, and particularly when it relates to bis own personal affiairs, then the remedies for fraud accomplished would be valueless, and commercial transactions rendered very insecure in their results. The law does not, however, countenance such conduct. Whether a party misrepresenting a material fact knew it to be false, or made the assertion without knowing whether it were true or false, is wholly immaterial, for the affirmation of what he does not know or believe to be true is equally in morals and law as unjustifiable as the affirmation of what is known to be positively false. (1 Story Eq., § 193.) This proposition was adopted by the court of appeals in Bennett v. Judson (21 N. Y., 238).
The defendant Bradley, fraudulently obtained goods with the intention of transferring them or their proceeds for the purpose of securing a certain class of creditors to the exclusion of others, and the two things formed one general design. If he had returned to the sellers from whom his recent purchases were made, their goods, or some portion of the proceeds, his conduct would have secured a more favorable consideration, and an honest intent in assigning the rest of his assets might have been gathered from all the circumstances there disclosed.
I do not arrive at this conclusion entirely free from doubt, but I should entertain greater doubt of the propriety of upholding the assignment.
I think the judgment should be affirmed.